IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **JOSE CRUZ ZAFRA,** §<br>    **Petitioner,** §<br> §<br>**v.** §<br> §<br>**KRISTI NOEM,** *Secretary of the U.S.* §<br>*Department of Homeland Security, et al.,* §<br>    **Respondents.** § | | EP-25-CV-00541-DB |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered Petitioner Jose Cruz Zafra's ("Petitioner") "Petition for Writ of Habeas Corpus and Complaint for Emergency Injunctive Relief" ("Petition"), filed on November 12, 2025, ECF No.[1] 1. After due consideration, this Court asserts its jurisdiction over Petitioner's claims and hereby orders Petitioner's bond hearing be held in accordance with the deadlines set forth herein or be released from custody. For the following reasons, the Petition is granted in part.

## BACKGROUND

Petitioner is a Mexican national who entered the United States without inspection in 2000 and has not left since. ECF No. 1 at 1. Petitioner has been gainfully employed in the United States since his arrival and most recently worked as a shift supervisor at McDonalds. Id at 2. He is also the primary financial support for his family. *Id.* In 2015, Petitioner was arrested in Illinois for a DUI. *Id.* On November 5, 2025, Petitioner was detained by ICE while at the bank in Chicago,

---

[1] "ECF No." refers to the Electronic Case Filing ("ECF") number for documents docketed in this matter. When a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the page numbers assigned by the ECF system.

Illinois. *Id.* Although Petitioner does not show up in the ICE Detainee Locator, his counsel placed a phone call to ICE/ERO to confirm that Petitioner is detained at the Camp Montana East Detention Facility El Paso, Texas. *Id.* at 1, 3. At the time he was detained, Petitioner had a pending U-Visa application as a victim of a crime in the United States that had been given a "bona fide determination," and had been granted deferred action on February 5, 2025. *Id.* at 2; *Id.* Ex. A at 2; ECF No. 6 at 2.

Petitioner filed the instant Petition on November 12, 2025, seeking an order for Respondents to hold a bond hearing within five days and accept jurisdiction to issue a bond order. ECF No. 1 at 22. He argues he is being detained in violation of his Fifth Amendment due process rights and the Immigration and Nationality Act. *Id.* at 20–21. Pursuant to the Court's briefing schedule, Respondents filed their response, ECF No. 6, on November 14, 2025, and Petitioner replied on November 19, 2025.

## LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2). This includes immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The petitioner seeking habeas relief must demonstrate she is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

**ANALYSIS**

Respondents erroneously assert the Court is without jurisdiction to review Petitioner's asserted claims. This Court recently rejected nearly identical arguments in a similar case. Further, the Court finds Petitioner's as-applied challenge under the Fifth Amendment's Due Process Clause has merit. Accordingly, Respondents must provide Petitioner with a bond hearing before an immigration judge in accordance with the orders herein or immediately release him. Lastly, because the Court finds an as-applied challenge meritorious,[2] it declines to address Petitioner's statutory interpretation claims.[3]

A.   Jurisdiction

As a threshold matter, the Court asserts its jurisdiction over this case. This Court has already rejected Respondents' identical arguments related to 8 U.S.C. §§ 1252(g) and (b)(9). *See Vieira v. De Anda-Ybarra*, No. EP-25-CV-00432-DB, 2025 WL 2937880 at *3 (W.D. Tex. Oct. 16, 2025) (rejecting jurisdictional arguments under Section 1252(g) and Section 1252(b)(9) based on Supreme Court precedent). Here, because there are no meaningful differences[4] in Respondents' arguments under those provisions, the Court rejects them for the reasons stated in *Vieira*.

---

[2] The parties argue about Respondents' novel interpretation regarding mandatory detention under Section 1225(b) and whether Petitioner falls within it. Even assuming without deciding Respondent's reading is correct, the Court will not address these arguments because the Court finds Petitioner is entitled to procedural due process in his as-applied challenge.

[3] Notably, courts across the country have recently held that this interpretation is either incorrect or likely incorrect. *See Buenrostro-Mendez v. Bondi*, 2025 WL 2886346 (S.D. Tex. Oct. 7, 2025), 2025 WL 2886346, at *3 (noting that "almost every district court to consider this issue" has rejected the Government's new interpretation); *Lopez-Campos v. Raycraft*, 2025 WL 2496379, at *8 n.5 (E.D. Mich. Aug. 29, 2025) (collecting twelve such decisions).

[4] The Court further reiterates its warning that Respondents "carefully consider the jurisdictional legal arguments it continues to present this Court in similar immigration habeas cases." *See*

Among their previous jurisdictional arguments, Respondents raise a new one based on Section 1252(e)(3). ECF No. 6 at 10. Section 1252(e) is titled "Judicial review of orders under section 1225(b)(1)" and the specific subparagraph, (e)(3), is titled "Challenges on validity of the system" and requires that "any challenge to the legality or constitutionality of any regulation implementing the expedited removal procedures of § 1225(b) must be made in the District Court for the District of Columbia." *Rodrigues v. McAleenan*, 435 F. Supp. 3d 731, 737 (N.D. Tex. 2020). In other words, the statute funnels systemic "facial challenges to the expedited removal process" itself to the District of Columbia. *See id.* at 738 (citation omitted). Constitutional as applied challenges to an individual's detention during said removal process, however, are left to the regional federal courts. *See id.; see also Padilla v. U.S. Immigration and Customs Enforcement,* 704 F.Supp.3d 1163, 1170 (W.D. Wash. 2023) (rejecting Section 1252(e)(3)'s applicability in a similar case where plaintiffs were challenging the constitutionality of their detention not their removal); *Guerrero Orellana v. Moniz*, No. 25-CV-12664-PBS, 2025 WL 3033769 at *6 (D. Mass. Oct. 30, 2025) (noting Section 1252(e)(3) likely only applies to systemic challenges of expedited removal procedures). The Court is unpersuaded by Respondents' arguments on the applicability of Section 1252(e)(3) to the claims raised in this case. Accordingly, this Court finds it has subject matter jurisdiction over Petitioner's claims.

B.    Procedural Due Process

Turning to the merits, Petitioner alleges his detention violates the Fifth Amendment's Due Process Clause. ECF No. 1 at 20–21. Respondents argue Petitioner has no procedural due process

---

*Rodriguez Cortina, v. De Anda-Ybarra*, No. EP-25-CV-00523-DB, 2025 WL 3218682 (W.D. Tex. Nov. 18, 2025).

claim because he is subject to mandatory detention under Section 1225(b)(2),[5] and he is not entitled to any more process than the statute gives him. ECF No. 6 at 12.

    1. *Petitioner is entitled to the Fifth Amendment's Due Process Clause protections.*

The Fifth Amendment's Due Process Clause forbids the government to "depriv[e]" any "person . . . of . . . liberty . . . without due process of law." U.S. CONST. amend V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. David*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana,* 504 U.S. 71, 80 (1992)). The Supreme Court "has said that government detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections, *see United States v. Salerno,* 481 U.S. 739, 746 (1987), or, in certain special and 'narrow' nonpunitive 'circumstances,' *Foucha,* 504, U.S. at 80, where a special justification, such as harm-threatening mental illness, outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Kansas v. Hendricks,* 521 U.S. 346, 356 (1997). *Id.* "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus,* 435 U.S. 247, 259 (1978).

Respondents first contend Petitioner has no claim of right under the Fifth Amendment's Due Process Clause because he is only entitled to the due process provided to him under the INA. ECF No. 6 at 12. In their view, Petitioner is not entitled to more process than what Congress

---

[5] This section is titled "Inspection of other aliens," and generally provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A).

provided him by statute, regardless of whether the applicable statute is § 1225(b) or § 1226(a). *Id.* at 12. Respondents cite to *Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020) to support their position. But, this Court agrees with the line of other courts that have found *Thuraissigiam* is not preclusive on the facts of this case because (1) Petitioner is not challenging his removal, but rather his detention during removal, and (2) he was not detained at the border on the threshold of initial entry, but rather after living in the United States for over twenty-five years.

In *Thuraissigiam*, the Supreme Court held "[m]ore than a century of precedent establishes that, for aliens seeking initial entry, 'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'" *Thuraissigiam*, 591 U.S. at 104. The petitioner in that case had been detained after making it 25 yards into U.S. territory, and the Court made clear that an individual detained shortly after unlawful entry cannot be said to have "effected an entry." *Id.* In declining an as-applied constitutional challenge to Section 1252(e)(2), the Court reasoned that "[w]hile aliens who have established connections in this country have due process rights in deportation proceedings, the Court long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." *Id.* at 107.

Respondents urge the Court to find *Thuraissigiam* squarely rejects an as-applied challenge in this context, arguing that "[r]egardless of whether the alien in Thuraissigiam was on 'the threshold of entry' as an applicant for admission detained under § 1225(b)(1), as opposed to an applicant for admission found within the interior and detained under § 1225(b)(2), the reasoning

of Thuraissigiam extends to all applicants for admission." ECF No. 6 at 12. Respondents' position overlooks the well-established "distinction between an alien who has effected an entry into the United States and one who has never entered [that] runs throughout immigration law." *Zadvydas*, 533 U.S. at 693. "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* (collecting cases). Even in *Thuraissigiam*, the core point of the Court's analysis in rejecting an as-applied challenge rested on the fact that as an individual who was on the initial threshold of entry, he wasn't entitled to more due process than that afforded by statute. Precedent and logic tell us that those individuals who have established ties in the country are protected by constitutional procedural due process. After all, it is a "well established" rule "that the Fifth Amendment entitles aliens to due process of law." *Trump v. J. G. G.*, 145 S. Ct. 1003, 1006 (2025). Here, it is undisputed Petitioner has lived in the United States since his initial entry in 2000, and that he was arrested by ICE while at the bank in Chicago, Illinois. ECF No. 1 at 1–2. Petitioner is entitled to the Fifth Amendment's Due Process Clause protections.

    2. *Based on <u>Mathews v. Eldrige,</u> Section 1252(b)(2) is unconstitutional as applied to Petitioner.*

Finding Petitioner is entitled to procedural due process protection under the Fifth Amendment, the question becomes how much. Petitioner argues Section 1252(b)(2) is unconstitutional as applied to him because it violates his due process protections including a hearing before an immigration judge to determine whether he is a flight risk or a danger to the community. ECF No. 1 at 20–21. Respondents argue due process does not require Petitioner to be

afforded a bond hearing, because Section 1225(b) does not provide one to him during removal proceedings. ECF No. 6 at 12. For reasons already discussed, Respondents arguments are misplaced. Further, Respondents argue Petitioner is receiving sufficient process because he is in full removal proceedings, where "the constitutional protections are built" in. *Id.* But that argument misses the mark because whatever constitutional procedures are required for his removal are separate and apart from the procedures required for his detention under the Fifth Amendment.

The Supreme Court's balancing test in *Mathews v. Eldrige* is dispositive. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors": (1) "the private interest that will be affected by the official action"; (2) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," and (3) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Id.* at 335.

The first *Mathews* factor weighs in Petitioner's favor. Respondents' position is that Petitioner does not acquire a protected liberty interest until his detention becomes prolonged, and Petitioner has no colorable claim here because "he has only been detained a brief period pending his removal proceedings." ECF No. 6 at 13. This position fails to consider that above all else, Petitioner has acquired a liberty interest by being present in the United States for over twenty-five years. "Freedom from imprisonment—from government custody, detention, or other forms of

physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. One's physical freedom is a paramount interest secured by statutes and the Constitution. *Martinez v. Noem*, No. EP-25-CV-430-KC, 2025 WL 2965859 at *3 (W.D. Tex. Oct. 21, 2025) (citation omitted). This applies to noncitizens as well, even if only to varying degrees. *Id.* "[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." *Martinez v. Hyde*, 792 F.Supp.3d 211 at 222 (D. Mass. 2025) (quoting *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958)). "In the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Id.* (quoting *Leng May Ma*, 357 U.S. at 187).

Here, Petitioner has been living in the United States for over twenty-five years, is the primary financial support for his family, and was gainfully employed as a shift supervisor at McDonald's. ECF No. 1 at 1–2. Like many courts across the country dealing with similar circumstances, this Court finds Petitioner possess a strong liberty interest in his freedom from detention because he has established a life here – albeit without authorization. *See, e.g,, Martinez v. Noem,* No. EP-25-CV-430-KC, 2025 WL 2965859 (W.D. Tex. Oct. 21, 2025)*; Sanchez Alvarez v. Noem*, No. 25-CV-1090, 2025 WL 2942648, at *1, 7 (W.D. Mich. Oct. 17, 2025); *Chogllo Chafla v. Scott*, Nos. 25-CV-437, 438, 439, 2025 WL 2688541, at *1, 10 (D. Me. Sept. 22, 2025). Accordingly, he possesses a cognizable interest in his freedom from detention that deserves great weight and gravity.

Turning to the second *Mathews* factor, which also weighs in favor of Petitioner. Here, the Court considers "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Respondents, of course, have a generalized interest in ensuring noncitizens appear for their removal hearings and do not pose a risk to the communities in which they live. While it appears from this record that Petitioner would not be a flight risk and has no criminal history that would pose a danger to the community,[6] Respondents could certainly vindicate this interest at a bond hearing. The government's interest is generally protected by affording bond hearings like the one Petitioner is requesting. Further, any fiscal or administrative burdens Respondents may assert by having to provide a bond hearing are diminished given the government had conducted such hearings until a change in the agency's interpretation of the law. ECF No. 1 at 9. Accordingly, this factor weighs in favor of Petitioner.

Lastly, the third *Mathews* factor also weighs in favor of Petitioner. This calls for the Court to consider "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Here, Section 1225(b)(2) as applied creates a substantial risk of erroneous deprivation of Petitioner's interest in being free from arbitrary confinement pending resolution of his removal proceedings. The risk lies in the automatic continued deprivation of liberty for a noncitizen who has lived in the United States for over twenty-five years and with strong ties to the community, especially where there are no facts in the record to reflect Petitioner's dangerousness or flight risk.

---

[6] Notably, Petitioner does have a DUI conviction from 2015. ECF No. 1 at 2.

Lastly, the value of additional safeguards is high given that it will allow an immigration judge conducting a bond hearing to make a determination on specific facts whether continued detention is necessary to ensure presence at removal hearings and safety for the community. Because all *Mathews* factors weigh in favor of Petitioner, Section 1225(b)(2) as applied to Petitioner violates his Fifth Amendment Due Process rights.

C.     Remedy

While courts grappling with the appropriate remedy in similar cases have ordered immediate release, this Court will instead order a bond hearing before an immigration judge first. But should Respondents disclaim the jurisdiction to do so, Petitioner must be immediately released. Further, at said bond hearing, the government shall bear the burden[7] of justifying Petitioner's continued detention during the pendency of his removal proceedings by clear and convincing evidence. Several courts have followed this course of action in similar habeas cases. *See e.g. Lopez-Arevelo*, 2025 WL 2691828 at *12–13; *Velasquez Salazar v. Dedos*, No. 25-CV-835, 2025 WL 2676729, at *9 (D.N.M. Sept. 17, 2025); *Morgan v. Oddo*, No. 24-CV-221, 2025 WL 2653707, at *1 (W.D. Pa. Sept. 16, 2025); *J.M.P. v. Arteta*, No. 25-CV-4987, 2025 WL 2614688, at *1 (S.D.N.Y. Sept. 10, 2025); *Espinoza*, 2025 WL 2581185, at *14; *Arostegui-Maldonado v. Baltazar*, 2025 WL 2280357, at *12 (D. Colo. Aug. 8, 2025).

---

[7] *See Lopez-Arevelo*, 25 WL 2691828 at *12 (noting that "as of 2020, the 'vast majority'—an 'overwhelming consensus'—of courts granting immigration detainees' habeas petitions have placed the burden on the Government to prove by clear and convincing evidence that the detainee poses a danger or flight risk. *Velasco Lopez*, 978 F.3d at 855 n.14 (citations omitted). Allocating the burden in this manner reflects the concern that '[b]ecause the alien's 27 potential loss of liberty is so severe . . . he should not have to share the risk of error equally.'" (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020)).

**CONCLUSION**

For the reasons stated above, this Court determines it has jurisdiction over the instant matter, and Petitioner has established a violation of the Fifth Amendment's Due Process Clause as applied to him. Accordingly, the following orders shall issue:

**IT IS HEREBY ORDERED** the Petitioner Jose Cruz Zafra's "Petition for Writ of Habeas Corpus and Complaint for Emergency Injunctive Relief," ECF No. 1, is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** Respondents **SHALL PROVIDE** Petitioner with a bond hearing before an immigration judge **no later than November 26, 2025** at which the government shall bear the burden of justifying, by clear and convincing evidence, the dangerousness or flight risk for Petitioner's continued detention; or (2) release Petitioner from custody, under reasonable conditions of supervision, during the pendency of his removal proceedings.

**IT IS FURTHER ORDERED** Respondents **SHALL FILE** an advisory informing the Court when the bond hearing will be held in accordance with the preceding order **no later than November 24, 2025**.

**IT IS FINALLY ORDERED** Respondents **SHALL FILE** an advisory informing the Court, in detail, of the reasons for the IJ's bond hearing decision **no later than December 1, 2025.**

**SIGNED** this **20th** day of **November 2025**.

_____
**THE HONORABLE DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**